**3:13-cv-02561 Sec P**

NUMBER _____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

---

### BOBBY D. HIGGINBOTHAM

Plaintiff-Appellant

VERSUS

### STATE OF LOUISIANA

Defendant-Appellee



RECEIVED

AUG 2 6 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY _____

---

### ON WRIT OF HABEAS CORPUS

### FROM THE LOUISIANA SUPREME COURT

---

### ORIGINAL MEMORANDUM  BRIEF OF PLAINTIFF-APPELLANT
### BOBBY D. HIGGINBOTHAM

---

**BOBBY D. HIGGINBOTHAM**
**IN PROPER PERSON**
**349 COOTER POINT ROAD**
**WATERPROOF, LA  71375**
**TELEPHONE (504) 722-5665**

## VOLUME 2 OF 4

NUMBER _____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

---

## BOBBY D. HIGGINBOTHAM

Plaintiff-Appellant

### VERSUS

## STATE OF LOUISIANA

Defendant-Appellee

---

## ON WRIT OF HABEAS CORPUS

## FROM THE LOUISIANA SUPREME COURT

---

## ORIGINAL MEMORANDUM  BRIEF OF PLAINTIFF-APPELLANT

## BOBBY D. HIGGINBOTHAM

---

**BOBBY D. HIGGINBOTHAM
IN PROPER PERSON
349 COOTER POINT ROAD
WATERPROOF, LA  71375
TELEPHONE (504) 722-5665**


## VOLUME 2 OF 3

NUMBER _____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

---

## BOBBY D. HIGGINBOTHAM

Plaintiff-Appellant

VERSUS

## STATE OF LOUISIANA

Defendant-Appellee

---

## ON WRIT OF HABEAS CORPUS

## FROM THE LOUISIANA SUPREME COURT

---

## ORIGINAL MEMORANDUM  BRIEF OF PLAINTIFF-APPELLANT

## BOBBY D. HIGGINBOTHAM

---

**BOBBY D. HIGGINBOTHAM**
**IN PROPER PERSON**
**349 COOTER POINT ROAD**
**WATERPROOF, LA  71375**
**TELEPHONE (504) 722-5665**

NUMBER _____

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

---

## BOBBY D. HIGGINBOTHAM

Plaintiff-Appellant

VERSUS

## STATE OF LOUISIANA

Defendant-Appellee

---

## ON WRIT OF HABEAS CORPUS

## FROM THE LOUISIANA SUPREME COURT

---

## ORIGINAL MEMORANDUM  BRIEF OF PLAINTIFF-APPELLANT

## BOBBY D. HIGGINBOTHAM

---

**BOBBY D. HIGGINBOTHAM
IN PROPER PERSON
349 COOTER POINT ROAD
WATERPROOF, LA  71375
TELEPHONE (504) 722-5665**

NUMBER _____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

---

## BOBBY D. HIGGINBOTHAM

Plaintiff-Appellant

## VERSUS

## STATE OF LOUISIANA

Defendant-Appellee

---

## ON WRIT OF HABEAS CORPUS

## FROM THE LOUISIANA SUPREME COURT

### CERTIFICATE OF INTERESTED PERSONS

The undersigned Pro Se litigant of record certifies that the following list of persons and entities as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.

These representatives are made in order that the Judge(s) of the Court may evaluate possible disqualification or recusal.

James Caldwell, Atty General of Louisiana
James Le Blanc, Secty-LA Dept of Public Safety and Corrections
Honorable Bernadette Johnson, Chief Justice LA Supreme Court
Rachel I. Conner, Esquire

**BOBBY D. HIGGINBOTHAM**
**IN PROPER PERSON**
**349 COOTER POINT ROAD**
**WATERPROOF, LA  71375**
**TELEPHONE (504) 722-5665**

_____
**Bobby D. Higginbotham, Petitioner**

## STATEMENT REGARDING ORAL ARGUMENTS

Counsel respectfully request oral arguments because such arguments may assist the Court in applying the facts to the issues raised.  Counsel believes that oral arguments may help simply the facts and clarify the issues.

i.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSON(S)

STATEMENT REGARDING ORAL ARGUMENTS-------------------------------- i.

TABLE OF CONTENTS------------------------------------------------------------ ii.

TABLE OF AUTHORITY--------------------------------------------------------- vi.

STATEMENT OF JURIDICTION------------------------------------------------ vi.

STATEMENT OF THE CASE----------------------------------------------------- vii.

STATEMENT OF THE FACTS---------------------------------------------------- ix.

SUMMARY OF ARGUMENT---------------------------------------------------- 1.

ARGUMENT 1--------------------------------------------------------------------- 1.

ARGUMENT 2--------------------------------------------------------------------- 4.

ARGUMENT 3--------------------------------------------------------------------- 16.

ARGUMENT 4--------------------------------------------------------------------- 19.

ARGUMENT 5--------------------------------------------------------------------- 21.

ARGUMENT 6--------------------------------------------------------------------- 23.

ARGUMENT 7--------------------------------------------------------------------- 27.

ARGRMENT  8-------------------------------------------------------------------- 30.

ARGUMENT  9-------------------------------------------------------------------- 34.

ARGUMENT 10-------------------------------------------------------------------- 37.

ARGUMENT 11-------------------------------------------------------------------- 40.

ARGUMENT 12-------------------------------------------------------------------- 42.

ARGUMENT 13-------------------------------------------------------------------- 43.

ARGUMENT 14-------------------------------------------------------------------- 44.

ARGUMENT 15-------------------------------------------------------------------- 47.

ARGUMENT 16------------------------------------------------------------------------- **48.**

ARGUMENT 17------------------------------------------------------------------------- **50.**

CONCLUSION --------------------------------------------------------------------- **51.**

AFFIDAVIT OF BOBBY D. HIGGINBOTHAM---------------------------------- **53.**

CERTIFICATE OF SERVICE-------------------------------------------------------- **54.**

CERTIFICATE OF COMPLIANCE------------------------------------------------ **55.**

**iii.**

# TABLE OF AUTHORITY

**CASES**                                                              **Pgs**

Alexander v. Louisiana, 405 U.S. 625, 629-30, 92 S. Ct. 1221, 1225, 31 L.
Ed. 2d 536 (1972) -------------------------------------------------------------------**19**

Argersinger v. Hamlin, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006
(1972)--------------------------------------------------------------------------------**24**

Arizona v. Fulminante, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)
            Id, at 309-310, 111 S. Ct. 1246, 113 L. Ed. 2d 302.---------- **22**


Batson v. Kentucky, 476 U.S. at 96-98, 106 S. Ct. 1722-1724---**13, 14, 19, 20 & 21**

Bernard v. Henderson, 514 U.S. F. 2d 744 (5th Cir 1975)----------------------------**42**

Brady v. Maryland, 10L. Ed. 2d 215 (1963)---------------------------------------**48**

Braswell v. Wainwright, 463 U. S. F. 2d 1148 (5th Cir 1972 -------------------------**42**

Brooks v. Tennessee, 406 U.S. 605, 32 L Ed. 2d 358, 92 S Ct. 1891 (1972)-------**42**

Chambers v. Mississippi, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 1049, 35
L. Ed. 2d 297, 313 (1973)--------------------------------------------------------**39 & 40**

Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579
(1979)----------------------------------------------------------------------------**17 & 18**

Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. ct. 792 (1963)------**24**

Hardy v. U. S., 375 U.S. 277, 11 L.Ed. 2d 331, 84 S. Ct. 424 (1964)--------- **7 & 11**

Holder v. U. S., 150 U.S. 91, 37 L. Ed. 1010, 14 S. Ct. 10 (1893)------------------**42**

Holloway v. Arkansas 435 U.S. 475 (1978); Cisco, 861 So. 2d 118----------------**29**

Miller-El v. Cockrell, 537 U.S. 322, 342, 123 S. Ct. 1029, 1042, 154 L.
Ed. 2d 931, 953 (2003)-------------------------------------------------------------**20**


Miller-El v. Dretke, 545 U.S. 231, 252 (U.S. 2005)----------------------------------**14**

iv.

## CASES                                                          Pgs

Montana v. Egelhoff, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017, 135 L.
Ed. 2d 361, 367 (1996)---------------------------------------------------------**39** and **41**

Old Chief  v. U.S., 519 U.S. 172, 180 (1997)--------------------------------------**35**

Snyder v. Louisiana, 552 U.S. 472, 476-477 (U.S. 2008)----------------------------**19**

Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1992--**10**

Taylor v. Louisiana, 419 U.S. 522, 527, 95 S. Ct. 692, 696, 42 L. Ed. 2d 690
(1975)----------------------------------------------------------------------------------**17**

Turner v. Louisiana, 379 U.S. 466, 472, 85 S. Ct. 546, 549, 13 L. Ed. 2d 424
(1965)----------------------------------------------------------------------------------**46**

U.S. v. Atilus, 425 F.2d 816 (5 Cir. 1971)---------------------------------------------**7**

U.S. v. Cronic, 466 U.S. 648 656, 104 S. Ct. 2039, 2045, 80 L. Ed. 2d 657,
666 (1984)--------------------------------------------------------------------------**39** and **41**

U.S. v. Gonzalez-Lopez, 548 U.S. 140, 150-52, 126 S. Ct. 2557, 165 L. Ed.
2d 409 (2006)--------------------------------------------------------------------------**22**

U. S. v. Schaefer, 299, U. S. F 2d 625 (7th Cir 1962)----------------------------------**42**

U.S. v. Winkle 587 F. 2d 705, 714 (5 Cir 1979) cert denied, 444 U.S. 827,
100 S. Ct. 51, 62 L. Ed. 2d 34 (1979)-----------------------------------------------------**46**

Washington v. Texas, 338 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967)-----**42**

## CONSTITUTIONAL AMENDMENTS

Fifth (5th ) Amendment of the U. S. Constitution

Sixth (6th) Amendment of the U. S. Constitution

Fourteenth (14th) Amendment of the U. S. Constitution

## JURISDICTION

28 USCA  2252 Prior to the hearing of a habeas corpus proceeding in behalf of a person in custody of State officers or by virtue of State laws notice shall be served on the attorney general or other appropriate officer of such State as the justice or judge at the time of issuing the writ shall direct.

## HABEAS CORPUS

A Writ of Habeas Corpus is a procedural device for subjecting executive, judicial scrutiny, where it is available, it assures, among other things, that a prisoner may require his jailer to justify the detention under the law. Peyton v. Rowe 20 L. Ed 2d 426, 391 U.S. 54.

**vi.**

## STATEMENT OF THE CASE

On February 12, 2009, a grand jury charged Higginbotham with a forty-four count indictment.  Shortly thereafter, the District Attorney successfully moved to have Higginbotham's attorney of choice disqualified.  In February 2010, the trial court appointed a public defender with a conflict of interest to "assist" Higginbotham.  Acknowledging his own conflict of interest, the public defender assigned one of his assistants to the task of assisting.

During jury selection, the prosecutor used five of five peremptory challenges to strike otherwise qualified African-Americans form the petit jury.  Plaintiff objected, citing the discriminatory used of peremptory strikes to exclude a minority group. R. 289.  Necessary portions of the official record, which would allow appellate counsel to assign errors to the discriminatory use of peremptory strikes, are marked inaudible. Id. It is apparent that the trial judge failed to engage in the analysis required by Batson v. Kentucky to ensure that peremptory strikes are not used to purge the petit jury of racial minorities. Id.

After the jury had been sworn, over plaintiff's objection, the prosecutor dropped forty two of the charges against Higginbotham and added a third charge.

**Vii.**

The state presented fifteen witnesses and entered numerous exhibits into evidence with plaintiff representing himself over objection. On April 8, 2010, after the prosecution had presented its entire case in chief and rested, the 2nd Circuit Court of Appeal granted plaintiff's emergency writ for supervisory review and ordered the trial court to recess for a minimum of thirty days.

During the recess it was discovered that necessary portions of the trial, including the testimony of two prosecution witnesses, were not recorded. Higginbotham moved for a mistrial based on the missing testimony. This request was denied and, based on the prosecution's assertion that the missing testimony related only to the Public Contract Fraud charge, the trial court issued a "partial mistrial" as to the Public Contract Fraud charge only.

On May 19, 2010, the plaintiff was convicted on one charge of Malfeasance in Office in violation of La. R.S. 14:134 and one charge of Felony Theft over $500.00 in violation of La.R.S. 14:67. After the verdict was announced, Judge Crigler remanded Higginbotham to jail without bond.

A week after the verdict, the trial judge disclosed that prior to the jury returning their verdict, he had caused polling slips which only provided for guilty verdicts on both charges to be delivered to the jury room.

Higginbotham's trial was infused with constitutional, statutory, structural

**viii.**

and prejudicial error. As a threshold matter, because there is an inadequate transcript on appeal, including witness testimony and the Batson analysis, Higginbotham has been denied his constitutional right to appellate review. Under the circumstances, this Court must reverse.

## STATEMENT OF THE FACTS

Higginbotham was duly elected and sworn in as Mayor of the Town of Waterproof on January 1, 2007. R. 607. When Higginbotham was elected to the office of mayor, the annual salary for the position was $12,000. The Board of Aldermen received a salary of $3,000 per year. In June 2007, the Board of Aldermen voted on and approved the 2007-2008 budget which included line items increasing the salaries for Higginbotham (to $36,000 per year), the Board of Aldermen (to $6,000) per year, the Town Clerk (to $30,000 per year) and for several other town administrative positions, all effective June 2007. R. 571, 574, 593, 606, 670. The salary raises were passed by unanimous vote. R.729. None of the raises, including those of the Board of Aldermen, some of whom testified for the prosecution, complied with the Lawrason Act requirement that salary changes be passed by ordinance. R. 736.

When he was elected, Higginbotham also applied for a credit card for the

ix.

Town *under his own name* because the town had insufficient credit to apply on its own. The Legislative Auditor testified at trial that all of Higginbotham's personal expenses charged to the credit card were reimbursed. R. 840.

On February 12, 2009, a grand jury charged Higginbotham with a forty-four count indictment. R. 70. Shortly thereafter, the District Attorney successfully moved to have Higginbotham's attorney of choice disqualified. In February 2010, the trial court appointed a public defender with a conflict of interest to "assist" Higginbotham. R. 301. Acknowledging his own conflict of interest, the chief public defender assigned one of his assistants to the task of assisting.

During jury selection, the prosecutor used five of five (100%) of its peremptory challenges to strike otherwise qualified African Americans from the petit jury. Higginbotham objected, citing the discriminatory use of peremptory strikes to exclude a minority group. R. 289. Necessary portions of the official record, which would allow appellate counsel to assign errors to the discriminatory use of peremptory strikes, are marked inaudible. *Id.* It is apparent that the trial judge failed to engage in the analysis required by *Batson v. Kentucky* to ensure that peremptory strikes were not used by the District Attorney to purge the petit jury of potential African American jurors. *Id.*

**X.**

During jury selection, Higginbotham attempted to use his sixth and final peremptory strike to strike Juror Harry Goldman.  Harry Truman Goldman sits on the Board of Directors of St. Joseph Bancshares, which owns Cross Keys Bank, where a number of the witnesses and a fellow juror, Ms. Brenda Mize, were employed.  As a result of the trial court's erroneous denial of Higginbotham's attempt to strike Mr. Goldman, Mr. Goldman was seated on the jury that convicted Higginbotham.

After the jury had been sworn, over plaintiff's objection, the prosecutor dropped forty two of the charges against Higginbotham and added a third charge. The trial court denied a motion for a mistrial based on the mandatory provisions of La.C.Cr.P. Art. 487.

The state presented fifteen witnesses and entered numerous exhibits into evidence with Higginbotham representing himself over objection.   On April 8, 2010, after the prosecution had presented its entire case in chief and rested, the Second Circuit Court of Appeal granted Higginbotham's emergency writ for supervisory review and ordered the trial court to recess for a minimum of thirty days.

During the recess it was discovered that necessary portions of the trial,

**xi.**

including the testimony of two prosecution witnesses, were not recorded. Higginbotham moved for a mistrial based on the missing testimony. This request was denied and, based on the prosecution's assertion that the missing testimony related only to the Public Contract Fraud charge, the trial court issued a "partial mistrial" as to the Public Contract Fraud charge only.

On May 19, 2010 the Higginbotham was convicted on one charge of Malfeasance in Office in violation of La.R.S. 14:134 and one charge of Felony Theft over $500 in violation of La.R.S. 14:67. Directly after the verdict was announced, Judge Crigler remanded Higginbotham, a man with no previous criminal record and significant ties to the community, to jail without bond. A week after the verdict, the trial judge disclosed that, prior to the jury returning their verdict, he had caused polling slips, which he created, to be delivered to the jury which only allowed the jury to select guilty on both charges. The trial court denied Higginbotham's Motion for New Trial on December 3, 2010. On February 29, 2011, Higginbotham was sentenced to seven (7) years at hard labor with three (3) years suspended and restitution. Requests for an appeal bond were denied. Plaintiff served over nineteen months in prison.

## SUMMARY OF ARGUMENT

Higginbotham's trial was infused with statutory and constitutional error from his arraignment up to and including the preparation of the appellate record. These errors will be discussed in detail *infra*. As a threshold procedural matter, the Second Circuit Court of Appeal improvidently granted the state's application for rehearing in violation of the Uniform Rules of the Courts of Appeal.  Secondly, because there is an inadequate transcript on appeal, including witness testimony, the *Batson* analysis, and a record of the number of peremptory strikes used by each side, Higginbotham has been denied his constitutional right to appellate review. Based on the prejudicial impact of the errors, singly and cumulatively, this Court should exercise its supervisory authority to vacate the decision on rehearing of the Second Circuit Court of Appeal.

## ARGUMENT

### 1.

### THE LOUISIANA SUPREME COURT ERRED WHEN IT ALLOWED THE CIRCUIT COURT'S  DOCKETING AND GRANTING THE DISTRICT IMPROPERLY FILED MOTION FOR  REHEARING.

The Second Circuit Court of Appeal erred when it docketed, considered and granted the state's improperly filed Motion for Rehearing.  In spite of being fully aware that Higginbotham was represented by counsel, the state failed to comply

1.

with Uniform Court of Appeal Rule 2-7.2. Under the terms of URCA 2-7.2, the clerk of court had no discretion but to reject the state's pleading. This Court should vacate the Second Circuit Court of Appeal's decision on rehearing as improvidently granted or in the alternative, remand to the *en banc* Second Circuit Court of Appeal to determine an appropriate remedy for the state's serious omission. (See Attachments #8, 9 & 10)

The Second Circuit Court of Appeal reversed Higginbotham's conviction and sentence on April 25, 2012, Chief Judge Brown dissenting. Thereafter, the state filed an application for rehearing on May 8, 2012, with a Certificate of Service signed by District Attorney James Paxton stating that a copy of the application had been mailed to the defendant, with no mention of defendant's counsel of record. There is no doubt Rachel Conner and Harry Daniels III are and have been enrolled as counsel of record throughout the proceedings on Higginbotham's Motion for New Trial and Appeal. Conner and Daniels formally enrolled as counsel on June 14, 2010. Conner and Daniels filed the Motion for Appeal and on September 21, 2011, the Second Circuit Court of Appeal mailed the Notice of Lodging and Briefing Order, which was also mailed to Mr. Paxton, to attorneys Conner and Daniels, listing them as counsel of record for the defendant. The state filed an appellate brief on November 4, 2011 and certified service to

2.

"Counsel of record, Rachel Conner ... and Harry Daniels, III." Attorneys Conner and Daniels received timely service of the state's brief. The Second Circuit Court of Appeal mailed the Notice of Judgment to attorneys Conner and Daniels on April 25, 2012. Additionally, Conner and Daniels have had numerous communications with Mr. Paxton in their capacity as Higginbotham's counsel of record. Inexplicably, the state did not serve Conner and Daniels with a copy of their application for rehearing.

Uniform Court of Appeal Rule 2-7.2 provides: *"Unless the motion or pleading bears a certificate showing that a legible copy thereof has been delivered or mailed to opposing counsel of record, and to each opposing party not represented by counsel, and showing the date of service thereof, it shall not be filed or docketed."*

When she received the Notice that the state's motion for rehearing had been granted, counsel made the Second Circuit Court of Appeal aware that counsel of record had not been served with a copy of the state's application. On several occasions Attorney Conner called Mr. Paxton's office to obtain a copy of the application, but phone calls were not returned. Ms. Conner did not receive a copy of the application until May 23, 2012, over two weeks after it was filed.

The state willfully failed to comply with URCA Rules 1-14.1-2-14.2. The

3.

clerk of the Second Circuit Court of Appeal should not have accepted the state's rehearing application for filing without the certificate of service required by URCA Rule 2-7.2. The state's motion was improper filed and should have been rejected. This Court should dismiss the Second Circuit Court of Appeal's decision on rehearing as improvidently granted. In the alternative, as suggested by Judge Williams in her dissent, this Court should remand to the Second Circuit Court of Appeal to "convene en banc to determine the appropriate response to the state's serious omission."

In October, 2011, when the Second Circuit Court of Appeal Clerk's office sent documentation to Higginbotham (while at David Wade Correctional) to complete his Pro Se brief on appeal, he received specific instructions that all counsel of record must receive a copy of the Pro Se brief and to certify same. As a non-member of the bar, if Higginbotham was required to notify counsel, then the District Attorney was also required to do the same.

**2.**

**THE LOUISIANA SUPREME COURT ERRED WHEN IT FAILED TO CONSIDER HIGGINBOTHAM'S CLAIM THAT HE WAS DENIED HIS CONSTITUTIONAL RIGHT TO APPELLATE REVIEW WHEN THE TRIAL COURT FAILED TO INSURE A COMPLETE TRANSCRIPT OF THE PROCEEDINGS IN VIOLATION OF HIS DUE PROCESS RIGHTS**

The condition of the appellate record in this case violates Higginbotham's

4.

right to meaningful appellate review under the Louisiana Constitution and constitutes a fatal defect in the proceedings warranting the vacatur of his conviction and sentence. During the proceedings it was discovered that the court reporter's tape recorder had not been turned on during the entirety of Ted Higginbotham's testimony and for the entire direct examination and portions of the cross examination of Dr. Glenda Richardson's testimony. Since the official transcript has been prepared, and the record lodged in the Second Circuit Court of Appeal, it has also been discovered that significant portions of the trial were either not recorded are inaudible, including the trial court's analysis and ruling following Higginbotham's *Batson* objection after the prosecutor used 5 of 5 (100%) of its peremptory strikes to strike potential African American jurors during jury selection. R.289. The Second Circuit Court of Appeal failed to address Higginbotham's claim directly and erred when it attempted to review Higginbotham's substantive claims in the absence of an adequate record.

To ensure that criminal defendants are afforded their constitutional right to judicial review, the Louisiana Constitution expressly guarantees criminal defendants the right to a complete appellate record. Article 1, § 19 provides that "[n]o person shall be subjected to imprisonment or forfeiture of rights or property without the right to judicial review based upon a complete record of all evidence

5.

upon which the judgment is based." The Louisiana Code of Criminal Procedure

Art. 843 codified the constitutional guarantee, providing that: "In felony cases ...

the clerk or court stenographer shall record all of the proceedings, including the

examination of prospective jurors, the testimony of witnesses, statements, rulings,

orders, and charges by the court, and objections, questions, statements, and

arguments of counsel." (See Attachment #1)

The Louisiana Supreme Court has explicitly underscored the importance of

the recordation requirement of La.C.Cr.P. Art 843 in preserving the constitutional

right to appeal:

> The purpose of the constitutional and codal (La.C. Cr. P. art. 843)
> requirement of recording all proceedings in felony cases is to make it
> possible for a party to support assignments of error on appellate
> review. *When a portion of the trial has not been recorded, a party
> cannot perfect assignments of error which occurred during that
> portion of the trial, and the appellate court cannot review any errors
> pursuant to C. Cr. P. art. 920 in order to insure that the trial was
> properly conducted." State v. Robinson*, 387 So. 2d 1143, 1144 (La.
> 1980) (Emphasis added) (citing *State v. Ford*, 338 So. 2d 107 (La.
> 1976)); see also *State v. Landry*, 97-0499 (La. 6/29/99), 751 So. 2d
> 214, 215 ("Complementary to [the] right [to appeal] is the
> constitutional right to judicial review based on a complete record of
> the proceedings. La. Const. Art. I, § 19.").

The problem of an incomplete record of a criminal proceeding is

compounded where, as here, counsel on appeal were not involved in the lower

court proceedings.  *Cf.  State v. Landry*, 751 So. 2d 214, 215 (La. June 29, 1999);

*U.S. v. Atilus*, 425 F.2d 816 (5 Cir. 1971); *Hardy v. U.S.,* 375 U.S. 277, 11 L. Ed.

2d 331, 84 S. Ct. 424 (1964).  "[W]here a defendant's attorney is unable, through

no fault of his own, to review a substantial portion of the trial record for errors so

that he may properly perform his duty as appellate counsel, the interests of justice

require that a defendant be afforded a new, fully recorded trial." *Landry*, 751 So.2d

at 215, quoting *State v. Ford*, 338 So. 2d 107, 110 (La. 1976).  The Louisiana

Supreme Court put it deftly in *State v. Ford*, 338 So. 2d 107, 110(La,1976),

reversing a second-degree murder conviction in which Appellate counsel did not

serve as trial counsel and the court reporter failed to record the testimony of

several state witnesses, stating: "Without a complete record from which a transcript

for appeal may be prepared, a defendant's right of appellate review is rendered

meaningless." (See Attachment #12)

In *State v. Harris*, 01-1910 (La. App. 4 Cir. 4/24/02) 817 So. 2d 1164,

following jury trial, defendant was convicted in the Criminal District Court,

Orleans Parish, No. 413-972, of unauthorized use of a movable having value of

$500 or more. The court held defendant was denied the right of appellate review,

when the transcript of trial testimony was not part of his record.  Similarly, in *State*

*v. Clark*, 2000-0348 (La. App. 4 Cir. 12/13/00) 776 So.2d 1249, a Defendant was

convicted in the Criminal District Court, Orleans Parish, No. 378-494, of second degree murder and he appealed. The Court of Appeal held that the missing transcript of the first day of a two-day trial rendered the record so incomplete as to warrant that conviction be vacated. The defendant in *State v. Bright*, 809 So.2d 1112, 2000-1255 (La. App. 4 Cir. 2/6/02), also obtained the vacatur of his convictions because of omissions in the transcript. In *Bright*, the transcript did not contain the defendant's testimony on direct examination, the testimony from a criminalist, a witness, and the victim's maternal grandmother. The *Bright* court concluded:

> [W]e must reverse because it could not be determined what was in the missing excerpts. We cannot determine whether the missing evidence was not crucial to the defense or could be gleaned from other sources. This court cannot review whether the defense conducted a thorough cross-examination of the "missing" witnesses. We cannot conclude on the record before us that the defense was unable to establish internal inconsistencies in their stories, or aspects of their stories that were inconsistent with the testimony of the other witnesses.

As in the *Bright* case, the case at bar involves a trial wherein the entire testimony of at least two witnesses was not recorded. Despite its best efforts, a reviewing court, likewise, cannot determine what transpired during the missing portions of Higginbotham's trial. Because the omissions in the court record are significant, because appellate counsel cannot adequately assign errors to the

8.

missing portions, because the appellate court cannot review the missing

portions, Higginbotham's conviction and sentence should be vacated.

2(a) **THE LOUISIANA SUPREME COURT ERRED WHEN IT ALLOWED THE TRIAL COURT'S FAILURE TO RECORD TWO PROSECUTION WITNESSES, FATALLY IMPAIRING HIGGINBOTHAM'S RIGHT TO ASSIGN ERROR TO THE UNDULY PREJUDICIAL NATURE OF THE TESTIMONY IN VIOLATION OF HIS FEDERAL AND CONSTITUTIONAL RIGHTS AND LA.C.E. 404(B).**

The condition of the court record in Higginbotham's trial renders it

impossible to conduct any judicial review, including the harmless error review

required by the erroneous admission of 404B evidence, of the missing testimony.

The Second Circuit of Appeal erred when it held that "In the case *sub judice*, the

auditor's testimony concerning purchases at the store, *as well as the missing*

*transcription of the two witnesses' testimony regarding ownership of the store*,

were not overly prejudicial." The Second Circuit's ruling contains several factual

errors, namely (1) the defendant does not concede that the missing testimony was

confined to subject of the public contract fraud charge, a factual dispute which is

now impossible to resolve because of the missing transcript and (2) all fifteen[1] of

9.

---

[1] Lt. Lee Harrell of the Louisiana State Police (R. 364, 367, 373, 380, 383-4, 386, 387, 397-401, 406), Theresa Stampley, a former employee of the town of Waterproof (R. 421); Robert Trahan, auditor with the Legislative Auditor's Office (R. 440-446); Ted Higginbotham (No transcript); Glenda Richardson (No transcript); Mariah Cooper (R. 482-86, 490-1); John Gallagher expert on Lawson act (R. 515); Lionel Travers, Alderman (R.541, 543, 558); Edna Cooper, Alderman (R. 616-21, 667); Marshall Clark (R. 685-690); Valerie Clark (R. 702-705); Elizabeth Cooper (R. 739); Caldwell Flood (R. 754); Miles Jenkins (R. 797); Calvin Moore (R. 801-838, 843-845).

the state's witnesses testified regarding the public contract fraud charge. However, the Second Circuit's ruling contains an even more problematic legal error and begs the question: If there is no record of the missing transcription, how did they reach the conclusion that it was not overly prejudicial to Higginbotham? Once the public contract fraud charge was "dismissed," all of the evidence presented at trial relating to the public contract fraud charge was transformed into impermissible "other crimes" evidence in violation of La. C.E. 404B. Higginbotham assigns error to the admission of the evidence. The erroneous admission of other crimes evidence is subject to harmless error review on appeal. *State v. Johnson*, 98-281 (La. 11/27/95), 664 So. 2d 94, reconsideration denied, 94-1379 (La. 4/8/96), 671 So. 2d 332. Harmless error exists where the guilty verdict actually rendered was "surely unattributable" to the error. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1992). Based on the record, there is no way for the court to determine what transpired during the missing portions of the trial and thus no way to review whether its admission was harmless or overly prejudicial, and no way to determine whether the verdict was surely unattributable to the error.

The Second Circuit Court of Appeal erred when it held that, despite conceding that the record was "abbreviated or incomplete," it found no error.

10.

"[W]here a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully recorded trial.'" *Landry*, 751 So. 2d at 215-16 (quoting *Ford*, 338 So. 2d at 110); see also *Hardy v. United States*, 375 U.S. 277, 281 (1964); *State v. Robinson*, 387 So. 2d 1143, 1144 (La. 1980).

Because there is no record of the examination of two witnesses who testified extensively relating to the facts underlying the public contract fraud charge and the twelve exhibits identified, discussed and presented to the jury during their examinations, there is now no way for counsel to identify the errors in the admission of this significant bad acts evidence or for the Court of Appeal to review the record to evaluate the unfairly prejudicial impact of the admission of the evidence. The failure of the trial court to safeguard Higginbotham's right to judicial review by the appellate courts based on a complete record of the trial proceedings amounts to structural error.

**2(b) THE APPELLATE TRANSCRIPT IS MARKED "INAUDIBLE" DURING CRITICAL PORTIONS OF THE TRIAL, SPECIFICALLY AFTER HIGGINBOTHAM RAISED AN OBJECTION TO THE PROSECUTOR'S USE OF 100% (FIVE OF FIVE) OF ITS PEREMPTORY STRIKES TO EXCLUDE OTHERWISE QUALIFIED AFRICAN-AMERICAN JURORS FROM THE PETIT JURY IN VIOLATION OF BATSON V. KENTUCKY.**

The condition of the appellate record makes it impossible for appellate

**11.**

counsel to adequately assign error the trial court's handling of Higginbotham's objection to the prosecutor's use of peremptory strikes in a racially discriminatory manner during jury selection. The prosecutor used five of five (100%) of his peremptory strikes to excuse otherwise qualified potential African American jurors from the petit jury. The record only reflects the state's reasons for excusing three of the jurors. There is no record of the trial court's analysis of the prosecutor's proffered race neutral reasons during the third and final step required by the United States Supreme Court in Batson v. Kentucky. Because the condition of the record is inadequate to effectively assign error to the prosecutor's racially discriminatory use of peremptory strikes, this Court should vacate Higginbotham's conviction.

The six person jury in Higginbotham's case was selected from two panels of twelve people each, with Higginbotham conducting voir dire *pro se*. Following the questioning of the second panel, and after the prosecutor used his third peremptory challenge to back strike a third African American juror, Higginbotham objected to the racial discrimination in the prosecutor's exercise of peremptory strikes. R. 289.

A significant part of Higginbotham's argument on his objection to the prosecutor's racially discriminatory use of peremptory strikes is marked with ellipses, indicating that it was not audible. Mr. Paxton gave his reasons for excusing three of the five African American jurors. R. 289. The prosecutor's

**12.**

reasons for excusing the remaining two African American jurors are not in the record. The Court's ruling on the objection is likewise marked with ellipses and noted as "inaudible." R.289.   The district attorney's response to the trial court's ruling is marked with inaudible, followed by an unidentified voice which is inaudible. R. 289.

The United States Supreme Court has established a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner violative of the Equal Protection Clause.   First, a defendant must establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor used his or her peremptory challenges to exclude potential jurors on the basis of race.   If a *prima facie* case is established, the burden then shifts to the state to articulate a race-neutral explanation for its peremptory challenges.   If a race-neutral explanation is tendered, then the trial court must determine whether the defendant has established purposeful discrimination.   *Batson v. Kentucky*, 476 U.S. at 96-98, 106 S. Ct. 1722-1724. A single instance of race or gender discrimination during the jury selection process, which is not identified and corrected by the trial court, constitutes reversible error. *Batson*, 476 U.S. at 95-96.

The record in this case is simply insufficient to determine whether or not the

**13.**

trial court found a *prima facie* case of discrimination, whether the prosecutor

proffered alleged race neutral reasons for exercising two of the five peremptory

strikes against African Americans, and whether or not the trial court engaged in

*Batson's* third step to determine whether or not, under the totality of the

circumstances, the state's proffered reasons were a pretext for racial

discrimination. Rather than address the absence of a meaningful record, the

Second Circuit Court of Appeal erroneously listed relevant factors about each of

the excused jurors, and effectively substituted reasons for two of the five jurors

(Ms. Gales and Mr. Coleman) because the prosecutor's reasons – if in fact he

offered any – is not included in the record. As the United States Supreme Court

stated in *Miller-El*,

> A Batson challenge does not call for a mere exercise in thinking up
> any rational basis. If the stated reason does not hold up, its
> pretextual significance does not fade because a trial judge, or an
> appeals court, can imagine a reason that might not have been shown
> up as false. The Court of Appeals' and the dissent's substitution of a
> reason for eliminating Warren does nothing to satisfy the
> prosecutors' burden of stating a racially neutral explanation for their
> own actions. *Miller-El v. Dretke*, 545 U.S. 231, 252 (U.S. 2005)

In the absence of a complete or adequate record, Higginbotham reurges his

*Batson* objection on appeal and assigns error. The trial court's failure to insure a

**14.**

complete record of the *Batson* objection, analysis and rulings amounts to structural

error. *State v. Jones*, 351 So. 2d 1194 (La. 1977)( Louisiana Supreme Court

held that the omission of a portion of the hearing on a motion for change of venue

was not an "inconsequential omission" and required reversal because it was

impossible to assess the existence of community prejudice or to ascertain whether

the evidence supported the defendant's contention that the motion was

improvidently denied.); *State v. Parker*, 361 So. 2d 226 (La. 1978) (Reversal

required when the transcript of the closing argument could not be prepared and

defendant assigned the state's closing argument as error).

### 2(c) THE APPELLATE TRANSCRIPT IS MARKED "INAUDIBLE" DURING CRITICAL PORTIONS OF THE JURY SELECTION INDICATING THAT HIGGINBOTHAM WAS DENIED HIS CONSTITUTIONAL RIGHT TO PEREMPTORY STRIKES.

During jury selection, Higginbotham attempted to use his sixth and final

peremptory strike to excuse Juror Harry Goldman from the petit jury. The trial

court denied Higginbotham his final peremptory strike. The Second Circuit Court

of Appeal held that "the record suggests, but does not conclusively show, that the

defendant was allowed only five peremptory challenges rather than six." The

denial of a peremptory strike is of a constitutional magnitude and amounts to

reversible error. The Second Circuit Court of Appeal should have reversed

Higginbotham's conviction on that basis. The Second Circuit Court of Appeal

**15.**

held:

> If the defendant was actually denied one of his peremptory challenges, that is potentially a reversible error. However, it appears that the record is simply incomplete or inaccurate, perhaps because of something inaudible – as it is in many other places in the transcript – and does not show that the trial court's count of peremptory challenges is incorrect.

Higginbotham has been prejudiced because the condition of the appellate Record makes it impossible for him to "conclusively" assign error to the trial court's failure to grant him the required number of peremptory strikes. The trial court cannot fail to provide a record on one hand, and then deny Higginbotham relief based on his failure to "conclusively" establish reversible error on the other. The failure of the trial court to safeguard Higginbotham's right to judicial review by the appellate courts based on a complete record of the trial proceedings amounts to structural error.

3.

**THE LOUISIANA SUPREME COURT ERRED IN FINDING THAT HIGGINBOTHAM'S MOTION TO QUASH THE JURY VENIRE ON DUE PROCESS AND EQUAL PROTECTION GROUNDS WAS PROPERLY DENIED.**

**16.**

The Sixth Amendment and the Due Process Clause of the Fifth Amendment require that a jury be drawn "from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S. Ct. 692, 696, 42 L. Ed. 2d 690 (1975).  Under Louisiana law, grand or petit juries shall not be set aside for any reason unless "persons have been systematically excluded from the venire solely upon the basis of race." La.C.Cr.P. art 419.  To establish a prima facie violation of the fair cross section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579 (1979).  The required elements for making a *prima facie* showing of a Sixth Amendment fair cross-section violation are made applicable to the states under the Fourteenth Amendment. *Id*.

Higginbotham presented evidence that in the spring 2010, African Americans made up 55.5% of the registered voters (2,376 of 4282 eligible jurors), but only 40% (60 of 150) of the members of the jury venire.  Whites made up 44.1% of the registered voters (1,888 of 4282 eligible jurors) but made up 59% (88

17.

of 150) of the members of the jury venire. Jurors categorized as "Other" made up .4% (18 of 4282 eligible jurors) and comprised 1% (2 of 150) of the members of the jury venire. The disparity between the African Americans who were eligible to serve as jurors based on their voter registration status (55.5%) exceeded the percentage of African Americans actually selected to serve in the jury venire by 15.5%. By contrast, eligible white citizens selected for the jury venire exceeded the overall venire of eligible voters by 15%.

The Louisiana Supreme Court erred when it denied Higginbotham relief based on this claim. The trial court should have found based on the statistical disparity and the pattern over five years, that Higginbotham had presented a *prima facie* case of discrimination. Once the defendant has made a *prima facie* showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community, the burden shifts to the state to justify the infringement by showing attainment of a fair cross section to be incompatible with a significant state interest. See *Duren*, 439 U.S. at 367-68. *See also Taylor*, 419 U.S. at 533 (argument that "women as a class serve a distinctive role in society and that jury service would ... substantially interfere with that function" did not advance sufficient governmental interest.")

The jury venire violated equal protection. The United States Supreme Court

**18.**

has held that "[a]lthough a defendant has no right to demand that members of his race be included on the [venire], he is entitled to require that the State not deliberately and systemically deny to members of his race the right to participate as jurors in the administration of justice." *Alexander v. Louisiana*, 405 U.S. 625, 629-30, 92 S. Ct. 1221, 1225, 31 L. Ed. 2d 536 (1972) citations omitted).

4.

## THE LOUISIANA SUPREME COURT ERRED IN UPHOLDING THE TRIAL COURT'S DENIAL OF HIGGINBOTHAM'S OBJECTION TO THE PROSECUTOR'S USE OF PEREMPTORY STRIKES IN A RACIALLY DISCRIMINATORY MANNER IN VIOLATION OF *BATSON V. KENTUCKY*.

The Louisiana Supreme Court erred when, rather than evaluate the trial court's analysis of the prosecutor's use of 100% of his peremptory strikes to excuse otherwise qualified African American jurors, [2] it substituted hypothetical race neutral reasons for the missing transcript.   Higginbotham adopts the arguments assigned *supra* regarding the insufficiency of the transcript to adequately argue the *Batson* claim but also assigns error to the Louisiana Supreme Court's treatment of the Batson argument as a separate, substantive claim. Discrimination based on race in the selection of a jury is unconstitutional. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); Snyder *v.*

19.

---

[2] The state used all five of the peremptory challenges it exercised (100%) to strike African Americans from the petit jury, specifically: Amanda Gales (R. 230), Johnny Coleman (R. 284), Diane Perry (R. 289), Willie Percy (R. 290), and Patrick McCraney (R. 290).

*Louisiana*, 552 U.S. 472, 476-477 (U.S. 2008). The official record is marked inaudible and does not reflect whether or not the trial court found a *prima facie* case of discrimination based on Higginbotham's objection, undertook the analysis required by *Batson* or whether or not after hearing from the prosecutor regarding three of five struck African Americans, the trial judge denied or simply disregarded Higginbotham's objection. Higginbotham submits that in either case, the trial court committed structural error when it failed to adhere to the requirements of *Batson* and its progeny and allowed the prosecutor to use its peremptory strikes in a racially discriminatory manner. Higginbotham is entitled to vacatur of his conviction on that basis.

The Second Circuit Court of Appeal and Louisiana Supreme Court erred when they side-stepped both the missing transcription issue and the lack of a *Batson* analysis by the trial court, and simply reprinted portions of the jury selection from each of the five struck African American jurors. The Supreme Court in *Miller-El* unequivocally stated that courts are required to look beyond the surface of the prosecutor's stated reason for a disputed strike and "assess the plausibility of that reason in light of all evidence with a bearing upon it." Courts may not satisfy the prosecution's burden by substituting a rational basis for the reason actually given. *Miller-El v. Cockrell*, 537 U.S. 322, 342, 123 S. Ct. 1029,

**20.**

1042, 154 L. Ed. 2d 931, 953 (2003). After reprinting selections of the jury selection, the Second Circuit Court of Appeal and the Louisiana Supreme Court state conclusively that they find no error in the trial court's rejection of Higginbotham's *Batson* challenges.

5.

## THE LOUISIANA SUPREME COURT ERRED WHEN THEY UPHELD THE TRIAL COURT'S DISQUALIFICAITON OF HIGGINBOTHAM'S COUNSEL OF CHOICE IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

The Louisiana Supreme Court erred when it held that Higginbotham's Assignment of error regarding the disqualification of his counsel of choice was without merit. Higginbotham retained Karl Koch to represent him when the state returned a 44 count indictment against him on February 12, 2009. In December 2008 Mr. Koch had been hired by Higginbotham to serve as the Waterproof Town Attorney. As soon as Mr. Koch began acting on Higginbotham's behalf, the prosecutor filed a *Motion to Disqualify Defense Counsel* stating that because the Town of Waterproof was the victim of the charges filed against Higginbotham, Mr. Koch's representation of Higginbotham constituted an impermissible conflict of interest. The prosecutor's motion to disqualify Higginbotham's counsel was granted, over objection, on March 24, 2009.

The trial court committed structural error requiring reversal when it removed

**21.**

Higginbotham's retained counsel of choice in this criminal case. *United States v.*
*Gonzalez-Lopez*, 548 U.S. 140, 150-52, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006);
*Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).
Structural errors defy harmless error analysis because they "affec[t] the framework
within which the trial proceeds," and are not "simply an error in the trial process
itself." *Id.*, at 309-310, 111 S. Ct. 1246, 113 L. Ed. 2d 302.

The Sixth Amendment of the United States Constitution provides that "[i]n
All criminal prosecutions, the accused shall enjoy the right . . . to have the
Assistance of Counsel for his defense." The Louisiana Constitution ensures similar
rights to the assistance of counsel for a criminal defendant as those arising under
the federal constitution. Louisiana Const. art. 1, §13 provides in relevant part: "At
each stage of the proceedings, every person is entitled to assistance of counsel of
his choice, or appointed by the court if he is indigent and charged with an offense
punishable by imprisonment."

The prosecutor's assertion that Mr. Koch's concurrent representation created
a conflict of interest was a spurious attempt to deprive Higginbotham of his
counsel of choice. The American Bar Association has recognized specifically with
regard to Rule 1.7, the rule relied on by the prosecutor in this case, those objections
based on conflict of interest should be considered carefully, because of the very

22.

real possibility that the ethical rules might be tactically abused by an opposing party. "Courts view such objections [to counsel of choice] with caution because of the potential for misuse." American Bar Association Annotated Model Rules of Professional Conduct, at 116. The trial court caused structural error when it granted the prosecutor's motion to disqualify Mr. Koch as defense counsel. The erroneous deprivation of Higginbotham's Sixth Amendment right to counsel of choice constitutes structural error is grounds for reversal of Higginbotham's conviction.

6.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT UPHELD THE TRIAL COURT'S VIOLATION OF HIGGINBOTHAM'S SIXTH AMENDMENT RIGHT TO COUNSEL BY FORCING HIM TO REPRESENT HIMSELF AT TRIAL IN SPITE OF HIS CLEAR DESIRE TO BE REPRESENTED BY COUNSEL**

The Louisiana Supreme Court erred when they held that Higginbotham's conduct amounted to a waiver of counsel. The Sixth and Fourteenth amendments of the U. S. constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. A defendant's right to the assistance of counsel is guaranteed by both our state and U. S. Constitutions. U.S. Const. amend.

23.

VI. La.Const. art. 1, § 13. The landmark cases of *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) and *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972) set the constitutional standard or mandate involving the right to counsel: "Absent a knowing and intelligent waiver, no defendant may be imprisoned if he was not represented at trial by counsel." *State v. McGowan*, 359 So. 2d 972 at 974 (La. 1978); *State v. Brooks*, 452 So. 2d 149, 155 (La. 1984).   The burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel falls upon the state. *State v. Wisenbaker*, 428 So. 2d 790 at 793, n. 10 (La. 1983).

At no time did Higginbotham waive his right to counsel. To the contrary, he repeatedly informed the trial court that he wished to be represented by counsel. R. 356, 357, 389.     After the District Attorney successfully moved to have Higginbotham's counsel of choice disqualified, in February 2010, the trial court assigned the public defender, Leroy Smith, to act as "stand by" counsel to Higginbotham. Mr. Smith was not present when he was appointed and was "told by way of the grapevine" that he had been appointed to act as "standby" counsel. R. 301. From the trial court's order, Mr. Smith understood that "we were to assist him. And it's a big step from assisting to being enrolled." R. 148. Mr. Smith had a conflict of interest and could not personally represent Higginbotham, so he

**24.**

appointed a member of his staff in his place.  R. 301.  Higginbotham met with the "standby" counsel for the first time on the morning of the first day of jury selection, March 29, 2010.  From the public defender's statements and the actions of the assistant public defender assigned to assist Higginbotham, it is clear that the public defender was confused about the role of "stand by" counsel, a concept typically used to protect the rights of defendants who affirmatively choose to proceed *pro se*.

On March 29, 2010, *the first day of jury selection*, Leroy Smith approached the judge requesting clarification of his role.  At a sidebar which is riddled with portions that are marked "inaudible," Mr. Smith informed the court, "If we're appointed, I mean ... we'd be bound to ask for a continuance because we have not prepared... I wanna be fair to the defendant and I don't think we could go forward..." R. 148.  Without making a ruling on what the role of the public defender would be regarding Higginbotham's representation, the trial court allowed jury selection to proceed with Higginbotham acting *pro se*.  The jury was selected by Higginbotham and sworn in on March 29, 2010.  The trial court did not address Mr. Smith's request for clarification of his role until the following day, March 30, 2010, directly prior to opening statements.  R.306.  In light of the public defender's effort to traverse the appointment as counsel, the trial court ruled that

**25.**

the public defender could "assist," but was "not required to enroll." Higginbotham continued to object, stating that "I don't have a legal education to do that, but see, I can't do all of the research and the case records and things that an attorney would do." R. 317. Higginbotham proceeded to represent himself, over objection, with Jamie Crews acting as "stand by" counsel. Ms. Crews was appointed to "assist" Higginbotham several days before trial. She did not review any of the discovery material provided by the state. She did not represent Higginbotham at trial, give an opening statement or question any of the witnesses. She did not argue objections.

Higginbotham filed a motion for continuance, requesting a sixty day continuance to retain an attorney and to adequately review discovery, including 10 boxes of material, provided by the prosecution on the eve of trial. The trial court denied the motion to continue. Higginbotham sought emergency supervisory writs in the Second Circuit Court of Appeal. The emergency writ was filed on the evening of March 31, 2010, as the state was presenting their case in chief. After staying the proceedings and requesting additional documentation from the judge, district attorney and clerk of court, the Second Circuit Court of Appeal ultimately granted Higginbotham's writ, noting the seriousness of the allegations and finding that the trial court had abused its discretion when it denied Higginbotham's *pro se*

**26.**

request for a continuance of trial.  The Second Circuit ordered a minimum 30 day continuance.

When the Second Circuit Court of Appeal's decision intervening in the proceedings and ordering the trial court to adjourn for a minimum of thirty days was announced, the damage had already been done.  The prosecution had selected a jury, presented its entire case in chief, and rested all while Higginbotham was acting without the assistance of counsel.  R. 875.

Higginbotham was denied his right to counsel during the most critical proceedings in this criminal trial.  The trial court's failure to appoint an attorney to represent the defendant, without an intelligent and knowing waiver constituted reversible error under La. Const. art. I, § 13 (1974).  *State v. McGowan*, 359 So. 2d 972 (La. 1978).

7.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT HIGGINBOTHAM'S CLAIM THAT "STANDBY" COUNSEL WAS OPERATING UNDER AN UNWAIVED CONFLICT OF INTEREST WAS WITHOUT MERIT.**

In February 2010, the trial court appointed Mr. Leroy Smith, the public defender in Tensas Parish, as standby counsel to represent Higginbotham.  Mr.

27.

Smith had a conflict of interest, in that he represented a plaintiff in a civil suit naming Higginbotham as a defendant, which he acknowledged in stating that he would assign one of his staff to handle the task of standby counsel. The Second Circuit Court of Appeal erroneously stated that the public defender's conflict was not shown in the record. To the contrary, Mr. Leroy Brown specifically referenced the conflict when he personally declined appointment. R. 301. As the head of the Public Defender's Office, any conflict preventing Mr. Smith from representing Higginbotham, even in the role of "standby" counsel, likewise disqualified members of his staff from representing Higginbotham. The Louisiana Supreme Court has made clear that lawyers working for indigent defender boards must be treated the same as lawyers working within a law firm for the purposes of determining whether there is a conflict of interest. *State v. Connolly*, 930 So. 2d 951, 955 (2006); *State v. McNeal*, 594 So.2d 876 (La. 1992).   Indigent Defender Boards are thus treated as the equivalent of private law firms to effectuate a defendant's Sixth Amendment right to effective assistance of conflict-free counsel and the ethical obligation of an attorney associated with other lawyers in a firm to avoid representing a client "when any one of them practicing alone would be prohibited from doing so . . . ." *Cf.* La. Rules of Professional Responsibility, Rule

**28.**

1.10(a).

The Second Circuit Court of Appeal erred and applied the incorrect standard when it held that the claim was meritless due to a lack of objection below. The trial court was aware of Mr. Smith's conflict, which triggered its independent responsibility to insure that Higginbotham's Sixth Amendment rights were respected. *See State v. Carmouche*, 508 So.2d 792, 803 (La. 1987) ("a formal incantation is not required to make an objection in the trial court. . . . [W]hen a conflict has been explicitly raised before the court, the trial judge must assume some responsibility to examine the nature of the conflict and its possible ramifications."). At the point that it became aware of Mr. Smith's conflict, the trial court was obligated to "either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel." *Holloway v. Arkansas*, 435 U.S. 475 (1978); *Cisco*, 861 So.2d 118. The trial court's failure to intervene requires reversal where, as here, an actual conflict of interest existed.

**29.**

8.

## THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT THE "PARTIAL MISTRIAL" ON THE PUBLIC CONTRACT FRAUD CHARGE WAS SUFFICIENT TO CURE ANY PREJUDICE RESULTING FROM THE MISSING TRANSCRIPT.

In opening statement the prosecutor told the jury that the state would show that Higginbotham committed the crime of public contract fraud. She stated that she would show:

> through the testimony of town employees, that they were directed to purchase gasoline, oil or other related goods that they needed from Higginbotham Place. You may wonder what's the problem with that. The auditors will tell you that Higginbotham Place, we learned is a place in which Bobby Higginbotham, the defendant, has a personal interest. We will show you that through testimony that Bobby Higginbotham asked his friends and family members to put the store in their name so that he can conceal the fact that he was the actual owner and actually had an ownership interest in that business... Bobby Higginbotham received personal gain through his employment or as an elected official as the mayor of the town of Waterproof." R. 342-3.

The prosecutor emphasized this point through *each of the fifteen witnesses* it presented its case in chief.

After it was learned that there was no recording of two prosecution witnesses, relying solely on the prosecution's assertion that the witness' testimony was confined to information regarding the public contract fraud charge, the trial court issued a "partial mistrial" on the public contract fraud charge alone. R. 896. The defense objected to the grant of a partial mistrial arguing that the testimony

**30.**

had been presented to the jury, the prejudice done, and no admonishment or partial mistrial could cure the legal defect.[3] R. 897.

Following the resumption of trial on May 19, 2010, over objection, the trial court read an admonishment to the jury stating that because there was no recording of the testimony of the two witnesses, Mr. Ted Higginbotham and Dr. Glenda Richardson, to "disregard any and all testimony by Dr. Richardson and Higginbotham. And further admonishes and instructs you to disregard any documents or physical evidence offered by either the State or Defendant during the testimony of Dr. Richardson or Mr. Ted Higginbotham. You are to draw no inferences in favor of or against either party because a partial mistrial was granted. All items of evidence relevant or pertaining to the charge of public contact fraud have been removed from the record and will not be shown to you when you examine the evidence." R. 940. The defense objected. R. 902. Without more, the next witness was sworn. (See Attachment #1 and 6)

Every single one of the fifteen witnesses presented during the state's case in Chief testified regarding the charge of public contract fraud. In addition, the state

**31.**

---

[3] As discussed, supra, because there is no record of the examination of two of the witnesses and the numerous exhibits identified during their examinations, there is now no way for counsel to identify the errors in the admission of this significant bad acts evidence or for the Court of Appeal to review the record to evaluate the prejudicial impact of the admission of the evidence.

eleven pieces of evidence to support this charge. The judge's admonishment to disregard the testimony of Dr. Richardson and Higginbotham was plainly inadequate to cure the prejudicial impact of the repeated references to Higginbotham Place, the US 65 Partnership and Higginbotham's alleged order for town employees to buy their supplies at "the mayor's store."

Despite the prosecutor's blurring of the charges, and confusion as to amounts of money, the trial court refused to give any additional admonishments at Higginbotham's request. R. 1035.

The issuance of a partial mistrial under the circumstances of this case was insufficient to protect Higginbotham's constitutional right to a fair trial and to judicial review under the law. Any and all information presented to the jury relating to the Public Contract Fraud charge constituted inadmissible "other crimes, wrongs, acts" evidence in violation of La. C.E. 404(B). The allegations were not the subject of a pretrial *Prieur* hearing, and were used at trial to establish that Higginbotham is a bad man, motivated by greed, who used his position to divert more than $56,000 to himself and his family. The Louisiana Code of Evidence Art. 404B (1) provides: Evidence of other crimes, wrongs, or acts is *not admissible* to prove the character of a person in order to show that he acted in conformity therewith. Even if independently relevant, the evidence may be

**32.**

excluded if its probative value is substantially outweighed by the dangers of unfair

prejudice, confusion of the issues, misleading the jury, considerations of undue

delay or waste of time. La.C.E. 403.  There is no express authority for the issuance

of a partial, rather than a complete, mistrial under the Louisiana Code of Criminal

Procedure.   This Court has sanctioned the grant of a partial mistrial under

La.C.Cr.P. Art 3 & 17, albeit under very different circumstances. *State v. Diggs*, 1

So. 3d 673 (La.App. 2 Cir. 2008) *writ denied*, 18 So. 3d 101 (La., Oct. 2, 2009).  In

*Diggs*, the defendant waived a trial by jury and proceeded to a bench trial on

charges stemming from two separate rapes involving two victims under similar

circumstances.  During the course of the trial, but before the witness was permitted

to testify, it was discovered that defense counsel was acquainted with the victim of

one, but not both, of the charged offenses.  The judge issued a partial mistrial as to

only those counts involving the victim who was known to the defense counsel.  On

appeal, this Court held that the issuance of a partial mistrial under the

circumstances was appropriate.  The *Diggs* case differs from this case in at least

three significant respects:  (1)  the conflict issue was raised before the witness

testified;  (2)  the case involved a trial by judge and not a jury of lay people; and

(3) a transcript of the proceedings existed to allow the Second Circuit Court of

**33.**

Appeal to conduct a harmless error analysis of the charge subjected to the partial mistrial in the context of the trial. The issuance of a partial mistrial, under the circumstances of this case, was improper. The trial court's admonishment was patently inadequate to cure the prejudice created by the admission of the testimony. The Second Circuit Court of Appeal erred when it held that a partial mistrial – in a situation where there was an incomplete transcript – was sufficient to cure the constitutional damage done. Higginbotham assigns as error the adequacy of that admonition to cure the prejudicial effect of the information presented to the jury.

**9.**

## THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT THE 404B EVIDENCE WAS PROPERLY ADMITTED AND WAS NOT UNDULY PREJUDICIAL.

The original indictment in this case consisted of forty-four (44) separate charges, forty-two of which were dismissed and an additional charge added, on March 30, 2010 after the jury was selected and prior to opening statements. The prosecution presented far reaching, prejudicial and irrelevant "other crimes" evidence throughout trial for the express purpose it is generally deemed inadmissible: to unfairly prejudice the jury against. Higginbotham, to confuse the issues, and to mislead the jury. (See Attachment #6 and 11)

**34.**

The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes, Wigmore says:

> "The natural and inevitable tendency of the tribunal--whether judge or jury--is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." I Wigmore, Evidence § 194 (3rd Ed.).

There is a significant risk that other crimes evidence will "lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused. See McCormick on Evidence, § 190 (Cleary Ed. 1972).

The Louisiana Code of Evidence article 404B(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

**35.**

The admissibility of so called 404(B) evidence is dependent on three things: 1) the factors listed in Article 404B must be at issue and have some independent relevance, 2) the State must prove the defendant committed the other acts by clear and convincing evidence, and 3) the requirements of *Prieur* must be met. *State v. Prieur*, 277 So. 2d 126 (La. 1973); State *v. Miller*, 98-301 (La. 9/9/98), 718 So. 2d 960, 962. Even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay or waste of time. La.C.E. 403. On March 29, 2010, the state gave notice of its intent to use evidence of other crimes, listing only:

> "any information or statements relative to the Bobby D. Higginbotham, Mayor's commission of the other crime of paying Bonuses to Waterproof, Louisiana, police officers as bonuses for writing a high volume of tickets from January 1, 2007 thru February 29, 2008, all while being Mayor of the town of Waterproof, Louisiana (sic)." R. 234

There is no indication in the court minutes that the trial court ever conducted a *Prieur* hearing on the state's notice or exercised its gate keeping function to exclude prejudicial evidence which did not meet the requirements of *Prieur*.

The trial was infused with improper and prejudicial references to in admissible other crimes evidence, including substantial testimony and evidence presented on the Public Contract Fraud charge, which was made the subject of the

**36.**

partial mistrial.  The trial court abdicated its responsibility to ensure a fair trial for

Higginbotham by failing to subject the prosecution's use of inadmissible 404(B)

"other crimes" evidence to the balancing test of *State v. Prieur*.

### 10.   THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT ANY ERROR STEMMING FROM THE TRIAL COURT'S RULING PROHIBITING HIGGINBOTHAM FROM ARGUING THAT HIS PROSECUTION WAS POLITICALLY MOTIVATED WAS HARMLESS.

When trial resumed on May 19, 2010, the state filed a *Motion in Limine* to

prevent the defense from presenting evidence that the Second Circuit Court of

Appeal had reinstated  Higginbotham to the position of mayor after the Board of

Aldermen voted to have him removed from office.   The trial court granted the

state's motion, over objection, and reiterated its earlier ruling prohibiting Mr.

Higginbotham from arguing in his defense that his prosecution was politically

motivated.   The trial court stated:  "I can make a ruling that it's not relevant to

discuss political, alleged political motivations for prosecution.   I mean, that's not

admissible in a trial.  What we're here about is not whose the mayor or what's the

status of the civil proceeding.   But what we're here about is guilt or innocence of

the charges." R. 906. The trial court was aware of the fact the Caldwell Flood, Jr.

37.

had committed perjury when he stated that he was Mayor of Waterproof. The trial Judge was made aware by the Second Circuit that his ruling vacating Higginbotham as Mayor of Waterproof had been reversed. Higginbotham was not allowed to impeach that state witness. (See Attachment #5)

The state and federal constitutions guarantee the right of a criminal defendant to present a complete defense. *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297, 313 (1973); State *v. Gremillion*, 542 So. 2d 1074, 1078-1079 (La. 1989). The exclusion of evidence favorable to the defense contravenes a defendant's right to subject the State's case to "the crucible of meaningful adversarial testing." *State v. Van Winkle*, 94-0947, p. 6 (La. 6/30/95), 658 So. 2d 198, 202 (stating that "evidentiary rules may not supercede the fundamental right to present a defense."); *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017, 135 L. Ed. 2d 361, 367 (1996); *See United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 2045, 80 L. Ed. 2d 657, 666 (1984).

The Second Circuit Court of Appeal and Louisiana Supreme Court erred in finding that the error was harmless.(See Attachment #6)

**38.**

11.

## THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT THE RECORD WAS INSUFFICIENT TO ESTABLISH THAT HIGGINBOTHAM'S RIGHT TO COMPULSORY PROCESS, RIGHT TO DUE PROCESS, A FAIR TRIAL AND RIGHT TO PRESENT A DEFENSE WAS VIOLATED BY THE TRIAL COURT'S RULING PROHIBITING HIM FROM CALLING MS. ELIZABETH COOPER AS A WITNESS IN HIS DEFENSE.

The prosecution called Ms. Elizabeth Cooper, a member of the Board of Aldermen, to testify in its case in chief while Higginbotham was proceeding *pro se*. Following her testimony in the prosecution's case, and without any effort to safeguard the defendant's rights, the trial court released Ms. Cooper from the rule of sequestration. When the trial resumed on May 19, 2010, Higginbotham, represented for the first time by legal counsel, announced his request to call Ms. Cooper to the witness stand. R. 956. The prosecutor objected, stating conclusively that Ms. Cooper had been "compromised." R.957. The trial court denied Higginbotham's request to call Ms. Cooper as a witness in his defense. R. 958.

The trial court's denial of Higginbotham's request to call a witness in his defense violated his rights to compulsory process, due process, a fair trial, and right to present a defense in violation of the state and federal constitutions. *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d

**39.**

297, 313 (1973); *State v. Gremillion*, 542 So. 2d 1074, 1078-1079 (La. 1989).

The exclusion of evidence favorable to the defense contravenes a defendant's right

to subject the State's case to "the crucible of meaningful adversarial testing." *State*

*v. Van Winkle*, 94-0947, p. 6 (La. 6/30/95), 658 So. 2d 198, 202 (stating that

"evidentiary rules may not supercede the fundamental right to present a defense.");

*Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017, 135 L. Ed. 2d 361,

367 (1996); *See United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 2045,

80 L. Ed. 2d 657, 666 (1984).

The purpose of sequestration is to assure that a witness testifies as to his own

knowledge, to prevent witnesses from being influenced by the testimony of others,

and to strengthen the role of cross-examination in developing facts. *State v.*

*Barber*, 30,019 (La. App. 2d Cir. 1/21/98), 706 So. 2d 563, writ denied, 1998-1353

(La. 10/9/98), 726 So. 2d 24. The mere fact that a witness speaks to other witnesses

does not establish a violation of the order of sequestration and does not show

possible prejudice. *State v. Strickland*, 94-0025 (La. 11/1/96), 683 So. 2d 218;

*State v. Armstead*, 432 So. 2d 837, 842 (La. 1983). Significantly, disqualification

of the witnesses was not the only option available to the trial court. La. C.E. art.

615(C) provides:   A court may impose appropriate sanctions for violation of its

exclusion order including contempt, appropriate instructions to the jury, or when

**40.**

such sanctions are insufficient, disqualification of the witness. As stated in the comments to La. C.E. art. 615 :( f) Disqualification, is the most drastic remedy. It precludes a party from adducing perhaps vital evidence and deprives the jury of the benefit of the witness' testimony. When a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case. *State v. Lucas*, 896 So. 2d 331, 338-339 (La.App. 2 Cir. Mar. 9, 2005). In a criminal case, the exclusion of a defense witness may violate the defendant's right to call witnesses on his behalf. *Washington v. Texas*, 338 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967). *Cf. Brooks v. Tennessee*, 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891 (1972). The Louisiana Supreme Court stated, in *State v. Jones*, 354 So. 2d 530, 532 (La. 1978): "Excluding the witness's testimony, in the absence of a sequestration violation with the consent or knowledge of the defendant or his counsel, is not a constitutionally permissible means of insuring reliable testimony." Federal courts have adopted a similar view. *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir. 1972). See also *United States v. Schaefer*, 299 F.2d 625 (7th Cir. 1962), cert. denied 370 U.S. 917, 8 L. Ed. 2d 497, 82 S. Ct. 1553 (1962); Holder v. United States, 150 U.S. 91, 37 L. Ed. 1010, 14 S. Ct. 10 (1893). Federal courts have provided collateral relief and reversed convictions

**41.**

where defense witnesses were excluded. E.g., *Barnard v. Henderson*, 514 F.2d 744 (5th Cir. 975).

Exclusion of witnesses would not be an appropriate sanction without a showing of how the infraction prejudiced the opposing side's right to cross-examine the witnesses and develop needed facts in the case. *State v. Lucas*, 896 So. 2d 331, 339 (La.App. 2 Cir. Mar. 9, 2005). The trial court took no steps to ensure that Higginbotham's rights were protected, and excused his witness without further inquiry. The trial court did not attempt to elicit how the witness might have been compromised or for what purpose Higginbotham was attempting to call her. The Second Circuit Court of Appeal and the Louisiana Supreme Court erred when they held that the record was insufficient to establish prejudice to Higginbotham.

12.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT DENIED HIGGINBOTHAM'S CLAIM THAT THE PROSECUTOR AMENDED THE INDICTMENT AFTER THE JURY HAD BEEN SWORN IN VIOLATION OF THE EQUAL PROTECTION CLAUSE.**

The record establishes that the first twelve jurors were called for examination on March 29, 2010 at 2:13 p.m. La.C.Cr.P. Art. 761. The following day, after the jury was sworn, the state amended the indictment by inserting a charge of Public Contract Fraud as Count 1. The state amended Count 24,

**42.**

previously a charge of Malfeasance in Office to Felony Theft over $500. Count 24 was re-numbered as Count 3. The remaining 42 counts of the indictment were dismissed. Higginbotham timely objected and moved for a mistrial pursuant to La.C.Cr.P. art. 487. The trial court erred when it failed to issue a mistrial on these mandatory grounds. The trial court had no discretion but to issue a mistrial under the law. The error violated Higginbotham's right to Equal Protection under the law.(See Attachment #6)

13.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT THE TRIAL COURT DID NOT ERR WHEN IT REFUSED TO GIVE THE DEFENSE'S REQUESTED JURY INSTRUCTION REGARDING CIRCUMSTANTIAL EVIDENCE.**

The trial court committed reversible error when it denied Higginbotham's request to instruct the jury as to the proper legal standard for evaluating circumstantial evidence, over objection.    R. 1071.   The trial court read the definitions of direct and circumstantial evidence without instructing the jury that under Louisiana constitutional law, circumstantial evidence is held to a higher standard than direct evidence. R. 1096. The court's jury instructions violated Higginbotham's state and federal right to due process.

Circumstantial evidence in Louisiana criminal convictions is held to a higher

43.

standard than direct evidence. *State v. Shapiro*, 431 So. 2d 372, 384 (La. 1983). La. R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The Louisiana Supreme Court in *Shapiro* expounded:   "The Louisiana legislature has, through this statute, provided greater protection against erroneous convictions based on circumstantial evidence than is provided by the Fourteenth Amendment. There is a possibility that the quality of evidence supporting a conviction would satisfy *Jackson v. Virginia*, supra, but would not satisfy the requirement of La. R.S. 15:438." *Id.* Determining whether or not evidence is circumstantial or direct is within the province of the jury. The Second Circuit Court of Appeal and the Louisiana Supreme Court erred when they found no error in the trial court's actions.   The failure to give this instruction undermined the presumption of innocence, violated Higginbotham's right to due process of law, and requires reversal.

14.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT HIGGINBOTHAM'S CLAIM THAT HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT CAUSED AN IMPERMISSIBLE BREACH INTO JURY DELIBERATIONS WAS WITHOUT MERIT.**

44.

Higginbotham's right to a fair trial was fatally impaired when the judge caused prejudicial polling slips, providing for only a guilty verdict, to be delivered to the jury prior to their announcement of a verdict. This communication constituted an impermissible breach into the deliberations of the jury, creating a presumption of prejudice. The wording and design of the slips were a clear signal to the jurors as to what the court believed the correct and inevitable verdict to be.

Following the discovery of the error, Judge Crigler did nothing to ensure that Higginbotham's rights were not adversely affected by the premature delivery of the potentially suggestive polling slips. He did not notify defense counsel about the error until a week after the verdict had been delivered and the defendant remanded to jail without bond. Tr. 14, 15. He did not question the Bailiff about her interactions with the jury while the polling slips were delivered. Tr. 14. He did not question the jurors or *voir dire* them about the possible impact of the premature delivery of the polling slips. *Tr. 14.* He did not deliver an admonition to the jurors. Tr. 14. He did not offer Higginbotham the opportunity to contemporaneously object or to request any form of relief, including a mistrial. Tr. 14.

The United States Supreme Court has clearly stated that a defendant's constitutional due process right of a fair trial by an impartial jury may be violated

**45.**

if the trial jurors are subjected to influences which cause their verdict to be influenced by circumstances other than the evidence developed at trial. *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S. Ct. 546, 549, 13 L. Ed. 2d 424 (1965); *State v. Marchand*, 362 So. 2d 1090, 1092-1093 (La.1978). While initially in any trial, there is a presumption of jury impartiality, *United States v. Winkle*, 587 F.2d 705, 714 (5 Cir. 1979), cert. denied, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed. 2d 34 (1979); *State v. Collins*, 02-546, p. 4 (La. App. 5 Cir. 11/26/02), 833 So. 2d 476, 478, writ denied, 03-0059 (La. 10/3/03), 855 So. 2d 307, any unauthorized communication made by a non-juror to a juror either directly or indirectly during trial about the matter pending before the jury is deemed presumptively prejudicial, *if not made in accordance with the rules of court and with full knowledge of all the parties.*

Judge Crigler's actions in failing to notify defense counsel of the error when the judge became aware of the problem compounded the prejudice to Higginbotham. *See e.g. State v. McKinsey*, 779 So. 2d 993, 1000 (La.App. 4 Cir. Jan. 17, 2001), writ denied *State v. McKinsey*, La. 2001-0447, 806 So. 2d 667, 2002 La. LEXIS 277 (La. Jan. 25, 2002) (presumption of prejudice overcome where judge took corrective measures by removing the "tainted" juror and replacing him with an alternate, questioning each juror individually in chambers as

**46.**

to negative impact of the contact and as to whether the contact adversely affected the juror's perception of the evidence and/or his ability to deliberate and jury verdict was non-unanimous); *State v. Collins*, 833 So. 2d 476, 479 (La.App. 5 Cir. Nov. 26, 2002)(presumption of prejudice overcome where judge held a closed hearing, questioned jurors individually about the effect of the third party influence each juror and their ability to remain fair and impartial, and took curative steps to counteract effect of third party.)

## 15.

## THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT THE STATE DID NOT WITHHOLD FAVORABLE INFORMATION IN VIOLATION OF BRADY V. MARYLAND.

The Louisiana State Police seized documents, tapes and other records pursuant to a search warrant on Town of Waterproof officials on or about August 28, 2008. The seized items included cassette tapes of meetings where the 2007/2008 budget as well as salary increases for all municipal employees, Board members and the Mayor were approved without an ordinance.

At trial, several witnesses, including the former mayor, testified that salaries had never been set by ordinance. R. 519-522, R. 497-8. Significantly, the time periods referenced included the time when District Attorney James Paxton was town attorney.

47.

Higginbotham made repeated requests for the cassette tapes of the meetings, which were favorable and were in the exclusive control of the District Attorney. See Brady v. Maryland 373 US 83, (1963). The District Attorney withheld the cassette tape of the June, 2007 meeting of the Board of Aldermen because he knew that exposing the tapes would prove the innocence of Higginbotham. The Second Circuit also denied Higginbotham's request to order the June 2007 cassette tapes turned over for examination.

16.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT HELD THAT HIGGINBOTHAM WAS NOT ENTITLED TO RELIEF WHERE HE WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FULL COMPLEMENT OF PEREMPTORY STRIKES IN VIOLATION OF DUE PROCESS RIGHTS.**

A criminal defendant has a constitutionally guaranteed right to peremptorily challenge jurors. La. Const. Art. I, § 17. An erroneous ruling of the trial court that deprives a defendant of one of his peremptory challenges constitutes a substantial violation of a constitutional and statutory right requiring reversal of the defendant's conviction and sentence. La.C.Cr.P. art 921; *State v. Jacobs*, 789 So. 2d 1280 (La. 2001); *State v. Robertson*, 630 So. 2d 1278 at 1280-81. See also *State v. Ross*, 623 So. 2d 643, 644 (La.1993); *State v. Bourque*, 622 So. 2d 198, 225 (La.1993); *State v. Lee*, 559 So. 2d 1310, 1317 (La.1990); *State v. Comeaux*, 514 So. 2d 84, 93

**48.**

La.1987); *State v. Brown*, 496 So. 2d 261, 263-64 (La.1986). The Second Circuit Court of Appeal erred when it denied relief despite Higginbotham's claim of error and its own acknowledgment that the record suggested that the defendant was only allowed five of his six peremptory strikes.[4]

During jury selection, Higginbotham, a non-lawyer representing himself pro se, attempted to exercise his final peremptory strike on Mr. Harry Goldman. Despite Higginbotham's clear attempt to exercise a peremptory strike, Mr. Goldman was seated on the jury that convicted Higginbotham.

The Louisiana Code of Criminal Procedure provides that: "No juror shall be sworn in until both parties agree on the composition of the jury or all peremptory challenges have been exhausted." La.C.Cr.P. art. 799.1. Mr. Higginbotham was deprived of his constitutional right to exercise a peremptory strike on Mr. Goldman. He did not exhaust his peremptory strikes and did not consent to the composition of the jury prior to its being sworn in violation of La.C.Cr.P. art 799.1. The Second Circuit Court of Appeal erred when it denied relief on the trial court's denial of Higginbotham's constitutional right to exercise his full complement of peremptory strikes.

**49.**

---

[4] Higginbotham exercised peremptory strikes on (1) Gracie Jesseph (R. 228); (2) David Lutken (R. 228); (3) Barclay L. Tullos (R. 229); (4) Audrey Hemphill (R. 230); and (5) Linda Outlaw (R. 287).

## 17.

**THE LOUISIANA SUPREME COURT ERRED WHEN IT DENIED
RELIEF ON THE BASIS THAT HIGGINBOTHAM'S MOTION TO
RECUSE THE DISTRICT ATTORNEY WAS ERRONEOUSLY DENIED
BY THE TRIAL COURT IN VIOLATION OF THE EQUAL PROTECTION
CLAUSE OF THE U S CONSTITUTION.**

The Louisiana Supreme Court erred when it held that the trial court's failure

to grant Higginbotham's Motion to Recuse the District Attorney was not error.

Higginbotham filed two Motions to Recuse District Attorney James Paxton on the

basis that he was the Town attorney of Waterproof until Higginbotham's election

as Mayor. Higginbotham fired Mr. Paxton, who subsequently successfully ran for

District Attorney. Mr. Paxton simultaneously represented an adverse party to

Higginbotham civilly, and had named Higginbotham as a defendant in several civil

suits, which he would benefit from Higginbotham's prosecution as a criminal

defendant. The trial court erroneously held that because Mr. Paxton had never

represented Higginbotham in the criminal case, there was no conflict. The Second

Circuit Court of Appeal and the Louisiana Supreme Court erred when they upheld

the trial court's decision.        The Louisiana Code of Criminal Procedure article

680 states, in pertinent part:  A district attorney shall be recused when he: (1) has a

personal interest in the case or grand jury proceeding which is in conflict with fair

and impartial administration of justice.

50.

Pursuant to this provision, recusal is mandatory when the district attorney has a personal interest in the cause which is in conflict with fair and impartial justice. The remedy of recusation pursuant to La. C.Cr.P. art. 680 "was developed in order to provide a form of protection against bias and partiality to one prosecuted for commission of a criminal offense." *State v. Perez*, 379 So. 2d at 1378, *State v. Bourque*, 622 So. 2d 198, 216-17 (La. 1993); *State v. Edwards*, 420 So. 2d 663, 673 (La. 1982), *State v. King*, 956 So. 2d 562, 565 (La., 2007). Mr. Paxton was in a position to benefit from the criminal prosecution of Higginbotham, as his client's financial interests were directly adverse to Higginbotham. The Second Circuit Court of Appeal and the Louisiana Supreme Court erred in upholding the trial court's erroneous denial of Higginbotham's Motion to Recuse the District Attorney.

## CONCLUSION

The Constitutional rights guaranteed to all citizens of this nation are in place for a reason and that reason is the rule of law. Constitutional rights guarantees us that the government (at any level) cannot arbitrarily abridge our rights in the name of law enforcement. The process by which the enforcers of the law bring alleged outlaws to justice matters. The rule of law purports that no one is above the law,

**51.**

not even the law enforcers. The courts do not have the lawful authority to suspend the constitution and in this instant case my constitutional rights have been trampled by the State Courts of Louisiana from district to and including the Supreme Court. If rules and process don't matter, then I never should have been tried in the first place.

Therefore, for the reasons detailed above and any other that may appear to this Court, Higginbotham moves this Court to exercise its jurisdiction and reverse the decision on rehearing, conviction and sentencing of the Louisiana Supreme Court.

Respectfully Submitted,

_____

BOBBY D. HIGGINBOTHAM
PRO SE
349 Cooter Point Road
Waterproof, LA 71375
(504) 722-5665 phone

**52.**

## AFFIDAVIT OF BOBBY D. HIGGINBOTHAM

Pursuant to U.S.C. 28 & 1746, under penalty of perjury, I, Bobby D.

Higginbotham to solemnly declare that the contents of this entire memorandum in

Support of 28 U.S.C. & 2254, MOTION TO VACATE, SET-ASIDE, CORRECT

SENTENCE, are true, correct, complete and not misleading, to the best of my first-

hand knowledge and the best evidence available to me, under the Laws of these

United States of America.

Respectfully Submitted

Bobby D. Higginbotham, Pro Se
Authorized Representative for:
Bobby D. Higginbotham, 569228
349 Cooter Point Road
Waterproof, LA 71375

**53.**

## CERTIFICATE OF SERVICE

I, Bobby D. Higginbotham, do hereby Certify that a copy of the foregoing brief has been served upon James Caldwell by placing a copy of same in the United States mail, properly addressed and adequately affixed postage thereto. Waterproof,  Louisiana on this 26th day of August, 2013.

**BOBBY D. HIGGINBOTHAM**

**54.**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 21(a) (7) (B), the typeface requirements of FED. R. APP.P (a) (5) and the type style

requirements of 32 (a) (6) because:

This brief contains 14,370 words, excluding the parts of the brief exempted by FED.R.APP. 32(a) (7) (B) (iii), and

This brief was prepared in a proportionally spaced typeface using Office Pro 10 in Time New Roman 14-point font.

Dated: 26th day of  August, 2013.

**Bobby D. Higginbotham**

**55.**